GARY AND BARBARA EISENBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Eisenberg v. Commissioner
Docket No. 27259-86
United States Tax Court
T.C. Memo 1995-180; 1995 Tax Ct. Memo LEXIS 174; 69 T.C.M. (CCH) 2446; April 18, 1995, Filed *174 Decision will be entered for respondent. For petitioners: Lois C. Blaesing and Chauncey W. Tuttle, Jr.
For respondent: Mary P. Hamilton, Paul Colleran, and William T. Hayes. DAWSON, WOLFE
DAWSON; WOLFE
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Norman H. Wolfe pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE WOLFE, Special Trial Judge: This case is part of the Plastics Recycling group of cases. For a detailed discussion of the transactions involved in the Plastics Recycling cases, see Provizer v. Commissioner, T.C. Memo. 1992-177, affd. without published opinion *175 996 F.2d 1216 (6th Cir. 1993). The facts of this case are substantially identical to those of the Provizer case. Gary Eisenberg (petitioner) was a member of the same law firm as Harold Provizer, one of the taxpayers in the Provizer case, and both of them made the exact same payment of $ 8,333 at the end of 1981 for a 16.67-percent interest in the DL and Associates general partnership. Pursuant to petitioners' request at trial, this Court took judicial notice of our opinion in the Provizer case. Respondent determined a deficiency in petitioners' joint 1981 Federal income tax in the amount of $ 17,855 and additions to tax for that year in the amount of $ 4,317 under section 6659 for valuation overstatement, in the amount of $ 893 under section 6653(a)(1) for negligence, and under section 6653(a)(2) in an amount equal to 50 percent of the interest due on the underpayment attributable to negligence. Respondent also determined that interest on deficiencies accruing after December 31, 1984, would be calculated at 120 percent of the statutory rate under section 6621(c). [2]
*176 The issues for decision are: (1) Whether expert reports and testimony offered by respondent are admissible into evidence; (2) whether petitioners are entitled to claimed deductions and tax credits with respect to petitioner Gary Eisenberg's investment in DL and Associates; (3) whether petitioners are liable for additions to tax for negligence or intentional disregard of rules or regulations under section 6653(a)(1) and (2); (4) whether petitioners are liable for the addition to tax under section 6659 for an underpayment of tax attributable to valuation overstatement; and (5) whether petitioners are liable for increased interest under section 6621(c). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated by this reference. Petitioners resided in Huntington Woods, Michigan, when their petition was filed. During 1981, petitioner was a practicing attorney and a member of the law firm of Provizer, Eisenberg, Lichtenstein, and Pearlman, P.C. Petitioner and Harold Provizer each had approximately a 43-percent interest in the law firm, and the other partners, Lichtenstein and Pearlman, each owned about a *177 7-percent interest. In 1981, petitioner Barbara Eisenberg was employed outside the home in the landscaping business. Petitioners' gross income for 1981 from wages, interest, dividends, tax refunds, and capital gains was in excess of $ 175,000 and, consequently, in the absence of significant deductions or credits, they were subject to payment of Federal income taxes in substantial amounts. Petitioner is a partner in DL and Associates, which is a limited partner in the Clearwater limited partnership. DL and Associates is the same tier partnership that we considered in Provizer v. Commissioner, supra. The underlying deficiency in this case resulted from respondent's disallowance of claimed losses and tax credits that were passed through both Clearwater and DL and Associates to petitioner. Petitioners have stipulated to substantially the same facts concerning the underlying transactions as we found in Provizer v. Commissioner, supra.[3] Those facts may be summarized as follows. In 1981, Packaging Industries, Inc. (PI), manufactured and sold six Sentinel expanded polyethylene (EPE) recyclers to ECI Corp. for $ *178 5,886,000 ($ 981,000 each). ECI Corp., in turn, resold the recyclers to F & G Corp. for $ 6,976,000 ($ 1,162,666 each). F & G Corp. then leased the recyclers to Clearwater, which licensed the recyclers to FMEC Corp., which sublicensed them back to PI. All of the monthly payments required among the entities in the above transactions offset each other. These transactions were done simultaneously. We refer to these transactions collectively as the Clearwater transaction. The fair market value of a Sentinel EPE recycler in 1981 was not in excess of $ 50,000. PI allegedly sublicensed the recyclers to entities that would use them to recycle plastic scrap. The *179 sublicense agreements provided that the end-users would transfer to PI 100 percent of the recycled scrap in exchange for a payment from FMEC Corp. based on the quality and amount of recycled scrap. In 1981, petitioner acquired a 16.67-percent partnership interest in DL and Associates in exchange for his investment of $ 8,333. DL and Associates owned a 6.188-percent limited partnership interest in Clearwater. As a result of the pass through from Clearwater, on their 1981 tax return petitioners deducted an operating loss in the amount of $ 6,668 and claimed an investment tax credit in the amount of $ 7,195 and a business energy credit in the amount of $ 7,195 for the recyclers. Respondent disallowed petitioners' claimed deductions and credits related to DL and Associates and Clearwater for taxable year 1981. In 1981, petitioner learned of DL and Associates and the Clearwater transaction from David Lichtenstein and Fred Gordon. The "DL" in DL and Associates stood for David Lichtenstein (Lichtenstein). Lichtenstein was a fellow member of petitioner's law firm. All of the partners in DL and Associates were associated with Lichtenstein. Three of the partners in DL and Associates *180 (petitioner, Harold Provizer, and Lichtenstein) were members of the same law firm. The other two partners in DL and Associates were clients and were, respectively, a relative and a long-time friend of Lichtenstein, David Kott and Allan Pearlman. With respect to DL and Associates, Lichtenstein's duties were purely administrative. In 1981, Fred Gordon (Gordon) was of counsel to petitioner's law firm. He and Lichtenstein have known each other since childhood and at one time were associated in law practice. Gordon is an attorney who holds a master's degree in business administration and at one time was employed by the Internal Revenue Service. Prior to the date of the Clearwater private placement offering, Gordon had considerable experience involving the evaluation of tax shelters, including formulating opinions regarding the tax shelters' economic vitality, the profit motives involved, and the valuation of the product involved. Gordon was paid a fee in the amount of 10 percent of each investment he guided to Clearwater. He recommended investing in the Clearwater offering to petitioner and his colleagues, as well as to some of Gordon's other clients. Petitioner attended Wayne *181 State University, graduated from the Detroit College of Law, is a member of the Michigan Bar, and has been a practicing attorney in Michigan since 1966. His primary areas of practice are industrial law, worker's compensation, and personal injury. Petitioner Barbara Eisenberg is a graduate of the University of Michigan and, at the time of trial, was a social worker, having previously been employed as a landscaper, school teacher, and art teacher. Petitioners do not have any formal training in investments. Petitioners do not have any education or work experience in plastics recycling or plastics materials. Petitioners did not independently investigate the Sentinel recyclers. Petitioners did not see a Sentinel recycler or any other type of plastic recycler prior to participating in the recycling ventures. OPINION In Provizer v. Commissioner, T.C. Memo. 1992-177, a test case involving the DL and Associates partnership and the Clearwater transaction, this Court (1) found that each Sentinel EPE recycler had a fair market value not in excess of $ 50,000, (2) held that the Clearwater transaction was a sham because it lacked economic substance and a business *182 purpose, (3) upheld the section 6659 addition to tax for valuation overstatement since the underpayment of taxes was directly related to the overstatement of the value of the Sentinel EPE recyclers, and (4) held that losses and credits claimed with respect to Clearwater were attributable to tax-motivated transactions within the meaning of section 6621(c). In reaching the conclusion that the Clearwater transaction lacked economic substance and a business purpose, this Court relied heavily upon the overvaluation of the Sentinel EPE recyclers. Although petitioners have not agreed to be bound by the Provizer opinion, they have stipulated that petitioner's investment in the Sentinel EPE recyclers was similar, if not identical, to the investment described in Provizer v. Commissioner, supra, and, pursuant to their request, we have taken judicial notice of our opinion in the Provizer case. Petitioner was a member of the same law firm as Harold Provizer, one of the taxpayers in the Provizer case. Petitioner also held a partnership interest in DL and Associates, the same tier partnership in which Harold Provizer had an interest. In the present *183 case, venue for appeal lies to the Court of Appeals for the Sixth Circuit, the same Court of Appeals that affirmed Provizer v. Commissioner, supra.While petitioners were not parties to the litigation in the Provizer case and res judicata does not apply, the doctrine of stare decisis is applicable. See Simmons v. Union News Co., 341 F.2d 531, 533 (6th Cir. 1965). Under these circumstances, in the absence of any significant distinguishing facts, respondent must be sustained on the authority of Provizer v. Commissioner, supra.Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971). Issue 1: Admissibility of Expert Reports and Testimony
Before addressing the substantive issues in this case, we resolve an evidentiary issue. At trial, respondent offered in evidence the expert opinions and testimony of Steven Grossman (Grossman) and Richard Lindstrom (Lindstrom). At trial and in their reply brief, petitioners object to the admissibility of the testimony and reports of Grossman and Lindstrom. *184 The reports of both Grossman and Lindstrom contain two sections: (1) A section on valuation of the Sentinel EPE recyclers (part one); and (2) a section concerning the availability of information regarding recycling machines in 1981 and 1982 (part two). Part one of each report is substantially, if not exactly, identical to the expert reports received in evidence in Provizer v. Commissioner, supra. Part two of each report was prepared after trial of the Provizer case. The testimony of Grossman and Lindstrom predominantly relates to part two of their respective reports. Petitioners object to the testimony and reports of Grossman and Lindstrom in their entirety. They object to part one of the reports on the ground of relevancy, and they object to part two and the testimony of Grossman and Lindstrom on the ground that Grossman and Lindstrom are not experts in the matters discussed in part two. In addition, petitioners specifically object to the admissibility of Grossman's report on the ground that it fails to meet the requirements of Rule 143(f) in that it does not include a list of Grossman's publications. We hold that the reports and testimony *185 of Grossman and Lindstrom are relevant and admissible and that Grossman and Lindstrom are experts in the fields of plastics, engineering, and technical information. We do not, however, accept Grossman or Lindstrom as experts with respect to the ability of the average person, who has not had extensive education in science and engineering, to conduct technical research, and we have limited our consideration of their reports and testimony to the areas of their expertise. We also hold that the failure to include a list of Grossman's publications in his report did not unduly prejudice petitioners or deny them a reasonable opportunity to obtain evidence in rebuttal of his testimony and that Grossman's report meets the requirements of Rule 143(f). Issue 2: Deductions and Tax Credits With Respect to DL and Associates
On their joint 1981 Federal income tax return, petitioners claimed the following with respect to petitioner's investment in DL and Associates: (1) Deductions in the amount of $ 6,888; (2) an investment tax credit in the amount of $ 7,195; and (3) a business energy credit in the amount of $ 7,195. Respondent disallowed these claimed deductions and tax credits. The *186 underlying transaction in this case is substantially identical in all respects to the transaction in Provizer v. Commissioner, supra. The parties have stipulated to the facts concerning the deficiency essentially as set forth in our Provizer opinion. Based on this record, we hold that the Clearwater transaction was a sham and lacked economic substance. In reaching this conclusion, we rely heavily upon the overvaluation of the Sentinel EPE recyclers. Accordingly, respondent is sustained on the issue with respect to the underlying deficiency. Moreover, we note that petitioners have stated their concession of this issue on brief. The record plainly supports respondent's determination regardless of such concession. For a detailed discussion of the facts and the applicable law, see Provizer v. Commissioner, T.C. Memo. 1992-177. Issue 3: Sec. 6653(a) Negligence
Respondent determined that petitioners were liable for the additions to tax under section 6653(a). Petitioners have the burden of proving that respondent's determination of an addition to tax is erroneous. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). *187 Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. In cases involving negligence, an additional amount is added to the tax under section 6653(a)(2); such amount is equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence. Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would employ under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). The question is whether a particular taxpayer's actions in connection with the transactions were reasonable in light of his experience and the nature of the investment or business. See Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973). Petitioner contends that he was reasonable in claiming deductions and credits with respect to his investment in DL and Associates and attempts to distinguish the instant case from Provizer v. Commissioner, T.C. Memo. 1992-177, by *188 alleging the following: (1) That claiming the deductions and credits with respect to DL and Associates was reasonable in light of the "oil crisis" in the United States in 1981; (2) that in claiming the deductions and credits, petitioner specifically relied upon his accountant, his stockbroker, and Lichtenstein, in addition to relying upon the promotional materials and Gordon; and (3) that petitioner was a so-called unsophisticated investor. When petitioners claimed the disallowed deductions and tax credits, they had little, if any, knowledge of the plastics or recycling industries and no engineering or technical knowledge. Petitioner did not independently investigate the Sentinel EPE recyclers. Instead, he relied on the purported value of the Sentinel EPE recyclers set out in the offering memorandum and on the statements made by or on behalf of the promoters. Although petitioner read the offering memorandum for Clearwater before he invested in DL and Associates, petitioner claims that he did not fully understand the transactions involved, and he failed to ask anyone to explain the details that he did not understand. At trial petitioner could remember almost nothing about the *189 Clearwater transaction, the equipment involved, the parties involved, or his analysis of the transaction. He admitted that he had no technical knowledge of the Sentinel EPE recyclers' functions, the byproduct, or the price of the byproduct. He was unsure as to how DL and Associates was supposed to generate income. The Clearwater offering memorandum clearly stated that the Clearwater transaction involved significant tax risks and that in all likelihood the Internal Revenue Service would challenge the transaction. A careful consideration of the materials in the offering memorandum, especially the discussions in the prospectus of high writeoffs and risk of audit, would have alerted a prudent and reasonable investor to the questionable nature of the promised deductions and credits. See Collins v. Commissioner, 857 F.2d 1383, 1386 (9th Cir. 1988), affg. Dister v. Commissioner, T.C. Memo. 1987-217. Petitioner admits that the warnings in the Clearwater offering memorandum concerned him. He contends, however, that he was reasonable in claiming the deductions and credits related to DL and Associates because of the "oil crisis" *190 in the United States during 1981. Petitioner argues that because of the media coverage of the oil crisis, he believed that an investment in recycling had good economic potential. As noted earlier, however, petitioner was unsure of how DL and Associates was supposed to generate income. Most notably, petitioner was unaware of the specific factors that would influence the success of the partnership, especially the price of resin. Petitioner's allegations of reliance on the media coverage of the "oil crisis" do not support his contention that he intended to profit from his investment in DL and Associates. Petitioners argue in general terms that due to rising oil prices in 1981, the Federal Government offered incentives to conserve energy, including the business energy credit. Petitioners contend that through the business energy credit, the Government was, in effect, guaranteeing investments related to reclamation or recycling of oil-related products. As applied to the facts of this case, the argument is unpersuasive. Certainly, the Government was not providing tax benefits for supposed investments that actually were shams and lacked economic substance. See Greene v. Commissioner, 88 T.C. 376 (1987). *191 In the first year of the investment, petitioners claimed direct reductions in their Federal income tax, via the investment tax credit and the business energy credit, equal to 173 percent of their cash investment. Therefore, like the taxpayers in Provizer v. Commissioner, supra, "except for a few weeks at the beginning, petitioners never had any money in the deal." Petitioner testified as to his understanding that, if for some reason the investment were not profitable, he still would get a return due to the tax benefits. A reasonably prudent person would not conclude without substantial investigation that the Government was providing massive tax benefits to taxpayers who took no risk and made no investment of their own capital. Moreover, during 1980 and 1981, in addition to the media coverage of the "oil crisis", there was "extensive continuing press coverage of questionable tax shelter plans." Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982). In light of the large tax benefits projected in the offering memorandum and petitioner's admitted observation *192 of the media, we find that further investigation of the investment clearly was mandated. A reasonably prudent person would have asked a qualified independent tax adviser if this windfall were not too good to be true. McCrary v. Commissioner, 92 T.C. 827, 850 (1989). In fact, petitioner argues that he consulted qualified tax advisers and relied upon them in claiming the disallowed losses and tax credits. Petitioner argues that his reliance on the advice of Lichtenstein, Gordon, his accountant Alvin Shapiro (Shapiro), and his broker Hal Rossen (Rossen), insulates him from the negligence-related additions to tax. Under some circumstances a taxpayer may avoid liability for the additions to tax under section 6653(a)(1) and (2) if reasonable reliance on a competent professional adviser is shown. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Such circumstances are not present in this case. Moreover, reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather *193 a factor to be considered. Id. In order for reliance on professional advice to excuse a taxpayer from the negligence additions to tax, the reliance must be reasonable, in good faith, and based upon full disclosure. Id.; see Weis v. Commissioner, 94 T.C. 473, 487 (1990); Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991); Pritchett v. Commissioner, 63 T.C. 149, 174-175 (1974). We have rejected pleas of reliance when neither the taxpayer nor the advisers purportedly relied upon by the taxpayer knew anything about the nontax business aspects of the contemplated venture. Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983); Steerman v. Commissioner, T.C. Memo. 1993-447. The record does not show that any of the persons upon whom petitioner allegedly relied possessed any special qualifications or professional skills in the recycling or plastics industries. In addition, *194 none of the persons allegedly relied upon by petitioner hired anyone with plastics or recycling expertise to evaluate the Clearwater transaction. In evaluating the transaction, Lichtenstein relied upon the offering materials, some discussion with an attorney from the law firm that provided the tax opinion letter incorporated in the Clearwater offering circular, and Gordon, and Gordon relied on the offering materials and on discussions with persons involved in the transaction. Petitioner first became aware of the Clearwater investments through Lichtenstein, who learned of the Clearwater transactions from Gordon. Petitioner testified that he relied heavily on Gordon in making his investment in DL and Associates and in claiming the associated tax deductions and credits. Petitioner met with Gordon only once prior to investing in DL and Associates and Clearwater. Harold Provizer and Lichtenstein were also present at that meeting. They talked about the Clearwater transaction, the business energy credit (purportedly a "window of opportunity"), and the other potential tax benefits associated with the Clearwater transaction. Petitioner testified that at that meeting Gordon recommended *195 that petitioner invest in Clearwater. Petitioner contends that he should be relieved of the negligence-related additions to tax under section 6653(a) because he relied upon Gordon. Gordon received payments in the amount of 10 percent of each investment that he guided to Clearwater. Petitioner was aware that Gordon was receiving such payments. We have held that in some circumstances a taxpayer's reliance on persons who are not independent of the promoter is not reasonable for purposes of section 6653(a). Horn v. Commissioner, 90 T.C. 908, 942 (1988); Vangeloff v. Commissioner, T.C. Memo. 1992-514; Provizer v. Commissioner, T.C. Memo. 1992-177; Lore v. Commissioner, T.C. Memo. 1990-56. Petitioners allege, contrary to our finding in the Provizer case, that Gordon was not paid to locate investors for the Clearwater transaction. Instead, they argue that he received a fee in exchange for services he performed for his clients. Among the services Gordon alleges he provided are analyzing the investment, monitoring the investment, and legal representation if *196 litigation ensued with respect to the investment. We find that these services were limited and incidental in nature. Gordon's essential function with respect to the Clearwater transaction was to find investors for Clearwater. He was compensated based upon the amount of investments. On this record, we find that Gordon received commissions in exchange for finding investors for Clearwater. Petitioners will not be relieved of negligence on the basis of their purported reliance on Gordon. Petitioner also contends that he relied upon Lichtenstein in investing in DL and Associates and claiming the related deductions and tax credits. Lichtenstein was a transactional attorney in petitioner's law firm and a fellow investor in DL and Associates. Petitioner testified that Lichtenstein suggested that petitioner invest in DL and Associates because Lichtenstein thought it was a good opportunity and Gordon had suggested it. Petitioner's purported reliance on Lichtenstein, who petitioner knew relied upon Gordon, was not reasonable. Petitioner contends that he also relied on his accountant, Shapiro, and his stockbroker, Rossen, in investing in DL and Associates and in claiming the disallowed *197 deductions and credits. Petitioner did not provide Shapiro with a copy of the Clearwater offering memorandum. He testified that he merely asked Shapiro about the business energy credit in general and was assured that the business energy credit was valid. Likewise, petitioner's inquiry of Rossen was very general. He testified that although Rossen did not know anything about the Clearwater transaction specifically, Rossen was aware of other recycling "tax deals". Petitioner's testimony was general and vague, providing no details of the advice he received from Shapiro or Rossen. Petitioner does not seriously contend that Shapiro or Rossen possessed any firsthand knowledge of the Clearwater transaction or the requisite expertise in recycling or the plastics industry to permit an evaluation of the merits of the Clearwater transaction. We do not think petitioner's reliance on Gordon, Lichtenstein, Shapiro, or Rossen was reasonable, in good faith, and based on full disclosure. Accordingly, we hold that petitioners are not entitled to relief from the negligence-related additions to tax under section 6653(a) because of their alleged reliance on professional advice. Petitioners' reliance *198 on Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408, is misplaced. The facts in the Heasley case are distinctly different from the facts of this case. In the Heasley case the taxpayers were not educated beyond high school and had limited investment experience, while in the instant case petitioner was a financially successful, sophisticated, highly educated, experienced attorney who had made numerous and varied investments. The taxpayers in the Heasley case actively monitored their investment and, as the Fifth Circuit stated, intended to profit from the investment. We cannot reach similar conclusions in the instant case. Although petitioner testified that he intended to profit from his investment in DL and Associates, he has failed to provide reliable evidence of any profit objective independent of tax savings. We consider petitioners' arguments with respect to the Heasley case inapplicable. Petitioner entered into the DL and Associates investment without any knowledge or background with respect to plastics or recycling and without seeking the advice of anyone who had such *199 knowledge. Petitioner did not examine any Sentinel EPE recyclers prior to investing in DL and Associates, and he did not seek the advice of an independent third party concerning the machines' values. Petitioners have not persuaded us that their situation is any different from that of the taxpayers in Provizer v. Commissioner, supra, where the negligence additions to tax were upheld. Petitioners paid $ 8,333 and claimed a tax deduction of $ 6,888 and tax credits in the amount of $ 14,390 for the first year of the investment alone. We conclude that they were negligent in doing so. We hold, upon consideration of the entire record, that petitioners are liable for the negligence-related additions to tax under the provisions of section 6653(a)(1) and (2). Respondent is sustained on this issue. Issue 4: Sec. 6659 Valuation Overstatement
Respondent determined that petitioners are liable for the addition to tax for valuation overstatement under section 6659 on the underpayment of their 1981 Federal income tax attributable to the investment tax credit and business energy credit claimed with respect to DL and Associates and Clearwater. A graduated *200 addition to tax is imposed when an individual has an underpayment of tax which equals or exceeds $ 1,000 and is attributable to a valuation overstatement. Sec. 6659(a), (d). A valuation overstatement exists if the fair market value (or adjusted basis) of property claimed on a return equals or exceeds 150 percent of the amount determined to be the correct amount. Sec. 6659(c). If the claimed valuation exceeds 250 percent of the correct value, the addition is equal to 30 percent of the underpayment. Sec. 6659(b). Petitioners claimed an investment tax credit and a business energy credit based on purported values of $ 1,162,666 for each Sentinel EPE recycler. Petitioners have conceded that the fair market value of each recycler was not in excess of $ 50,000. Therefore, if disallowance of petitioners' claimed credits is "attributable to" the valuation overstatement, petitioners are liable for the section 6659 addition to tax at the rate of 30 percent of the underpayment of tax attributable to the credits claimed with respect to DL and Associates and Clearwater. Section 6659 does not apply to underpayments of tax that are not "attributable to" valuation overstatements. See Todd v. Commissioner, 89 T.C. 912 (1987), *201 affd. 862 F.2d 540 (5th Cir. 1988). To the extent taxpayers claim tax benefits that are disallowed on grounds separate and independent from alleged valuation overstatements, the resulting underpayments of tax are not regarded as attributable to valuation overstatements. Krause v. Commissioner, 99 T.C. 132, 178 (1992) (citing Todd v. Commissioner, supra), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994). However, when valuation is an integral factor in disallowing deductions and credits, section 6659 is applicable. See Illes v. Commissioner, 982 F.2d 163, 167 (6th Cir. 1992), affg. T.C. Memo. 1991-449; Gilman v. Commissioner, 933 F.2d 143, 151 (2d Cir. 1991), affg. T.C. Memo. 1990-205; Masters v. Commissioner, T.C. Memo. 1994-197; Harness v. Commissioner, T.C. Memo. 1991-321. Petitioners stipulated to substantially the same facts concerning the underlying transactions as we found in *202 Provizer v. Commissioner, T.C. Memo. 1992-177. In the Provizer case we held that the taxpayers were liable for the section 6659 addition to tax because the underpayment of taxes was directly related to the overvaluation of the Sentinel EPE recyclers. In both Provizer v. Commissioner, supra, and the instant case, the overvaluation of the recyclers, exceeding 2325 percent, was an integral part of our findings that the Clearwater transaction was a sham and lacked economic substance. On brief, petitioners seek to distinguish Provizer v. Commissioner, supra, from the instant case by attempting to concede disallowance of the credits claimed with respect to DL and Associates and Clearwater on the ground that the Sentinel EPE recyclers leased by Clearwater were not placed in service during 1981. Petitioner, a member of the same law firm as Harold Provizer and a partner in DL and Associates, at this late date, takes this position, contrary to the position taken on petitioners' 1981 Federal income tax return and contrary to the position of DL and Associates as indicated on the partnership *203 return for 1981. Petitioners' attempted concession is inconsistent with everything petitioners and their associates contended earlier. Petitioners' position is that this concession, if accepted by the Court, might result in the disallowance of the credits on grounds other than overvaluation, rendering the overvaluation addition inapplicable. See McCrary v. Commissioner, 92 T.C. at 852-854; Todd v. Commissioner, supra.
We consider petitioners' belated attempted concession inappropriate. When taxpayers have sought to avoid the addition to tax under section 6659 by conceding, on brief, disallowance of claimed deductions and credits on the grounds that equipment was not placed in service during the years in issue, this Court repeatedly has declined to accept the concession. See Whittaker v. Commissioner, T.C. Memo. 1992-29, affd. without published opinion 993 F.2d 1541 (4th Cir. 1993); Morrissey v. Commissioner, T.C. Memo. 1989-646; Pacheco v. Commissioner, T.C. Memo. 1989-296; Looney v. Commissioner, T.C. Memo. 1988-332. *204 Similarly, in the instant case, we decline to allow petitioners to avoid the addition to tax for overvaluation by conceding the issue on brief. Moreover, the record is inconclusive with respect to the placing in service of the Sentinel EPE recyclers during 1981. At petitioners' request, we took judicial notice of the opinion in the Provizer case. In the Provizer case we sustained respondent's disallowance of the claimed deductions and credits solely on the grounds that the Clearwater transaction was a sham and lacked economic substance. We did not hold that the recyclers were not placed in service. The parties specifically stipulated to the following language from our Provizer opinion: None of the six [Sentinel EPE recyclers leased by the Clearwater partnership] were shipped to an end-user by the end of 1981. Two of the six machines never worked and remained for most of 1981 through 1985 in a PI warehouse. One machine was sent unsolicited to a company which refused to take the machine and immediately returned the invoice to PI.
For purposes of the investment tax credit and the business energy credit, property is "placed in service" when it is "placed in *205 a condition or state of readiness and availability for a specifically assigned function". Sec. 1.46-3(d)(1)(ii), Income Tax Regs. In this case, petitioners have failed to show that the recyclers were not placed in service during 1981. In 1981, the recyclers were simultaneously sold by PI to ECI Corp., sold to F & G Corp., leased to Clearwater, licensed to FMEC Corp., and sublicensed to PI. Leases for the recyclers were acquired by Clearwater, but the recyclers were not delivered to the places of business of end-users. Equipment need not be so delivered to end-users in order for the equipment to be considered "placed in service" for purposes of section 46. See Cooper v. Commissioner, 88 T.C. 84, 113-114 (1987). Equipment is still placed in service even though it is not in actual use during the year in issue if it is nevertheless devoted to the business of the partnership and ready for use should the occasion arise. Waddell v. Commissioner, 86 T.C. 848 (1986), affd. 841 F.2d 264 (9th Cir. 1988); Clemente, Inc. v. Commissioner, T.C. Memo. 1985-367. Petitioner *206 believed that the recyclers were placed in service in 1981. Based on the entire record in this case, we can not conclude that the Clearwater Sentinel EPE recyclers were not, in fact, placed in service during 1981. We disallowed petitioners' claimed investment tax credit and business energy credit with respect to DL and Associates and Clearwater on the grounds that the Clearwater transaction was a sham and lacked economic substance, and that holding was based on the overvaluation of the recyclers which was integral to the entire transaction. Where a transaction lacks economic substance, the taxpayer takes a zero basis in the asset upon which the taxpayer claims entitlement to the investment credit, and any basis claimed in excess of that is a valuation overstatement. Gilman v. Commissioner, 933 F.2d 143 (2d Cir. 1991); Rybak v. Commissioner, 91 T.C. 524, 566-567 (1988); Zirker v. Commissioner, 87 T.C. 970, 978-979 (1986); Donahue v. Commissioner, T.C. Memo. 1991-181, affd. without published opinion 959 F.2d 234 (6th Cir. 1992), affd. *207 sub nom. Pasternak v. Commissioner, 990 F.2d 893 (6th Cir. 1993). If the finding of lack of economic substance is due to an overvaluation, the deficiency is attributable to an overstatement of value and is subject to the section 6659 addition to tax. Illes v. Commissioner, 982 F.2d at 167. Disallowance of the claimed credits was based upon the overvaluation and is "attributable to" the valuation overstatement. Here the underpayment of taxes that related to petitioners' improper claiming of the investment tax and business energy credits is attributable to overvaluation of the Sentinel EPE recyclers, and the overvaluation is more than 250 percent. Accordingly, petitioners are liable for the section 6659 addition to tax at the rate of 30 percent of the underpayment of tax attributable to the disallowed credits for 1981. Petitioners also contend that respondent erroneously failed to waive the section 6659 addition to tax. Section 6659(e) authorizes respondent to waive all or part of the addition to tax for valuation overstatements if taxpayers establish that there was a reasonable basis for the adjusted bases or valuations *208 claimed on the returns and that such claims were made in good faith. Respondent's refusal to waive a section 6659 addition to tax is reviewable by this Court for abuse of discretion. Krause v. Commissioner, 99 T.C. at 179. Based on this record, we conclude that respondent did not abuse her discretion in failing to waive the section 6659 addition to tax. Petitioners now contend that their alleged reliance upon the promotional materials and on specified individuals in arriving at the claimed valuation was reasonable, and, therefore, respondent should have waived the section 6659 addition to tax. We note that in this case respondent could find that petitioner's reliance on the appraisal in the promotional materials was unreasonable. In addition, we have found that petitioner's purported reliance on specified individuals, all of whom lacked experience in the plastics or recycling industries, was unreasonable. Moreover, the record fails to indicate that petitioners ever requested a waiver from respondent pursuant to section 6659(e) until briefing after trial. We are reluctant to find that respondent abused her discretion here when, for all the record *209 shows, she was not even timely requested to exercise it. See Haught v. Commissioner, T.C. Memo. 1993-58; Lapin v. Commissioner, T.C. Memo. 1990-343, affd. without published opinion 956 F.2d 1167 (9th Cir. 1992). The record in this case contains no evidence to establish an abuse of discretion on the part of respondent. Accordingly, we hold that respondent's refusal to waive the section 6659 addition to tax is not an abuse of discretion. Respondent is sustained on this issue. Issue 5: Sec. 6621(c) Tax-Motivated Transactions
Respondent determined that interest on deficiencies accruing after December 31, 1984, would be calculated under section 6621(c). The annual rate of interest under section 6621(c) equals 120 percent of the interest payable under section 6601 with respect to any substantial underpayment attributable to tax-motivated transactions. An underpayment is substantial if it exceeds $ 1,000. Sec. 6621(c)(2). The term "tax motivated transaction" includes "any sham or fraudulent transaction." Sec. 6621(c)(3)(A)(v). In this case, the Clearwater transaction lacked economic *210 substance and was a sham. Transactions devoid of economic substance are sham transactions for purposes of section 6621(c)(3)(A)(v). Friendship Dairies, Inc. v. Commissioner, 90 T.C. 1054, 1068 (1988); Cherin v. Commissioner, 89 T.C. 986, 1000 (1987). Therefore, by definition the transaction is tax-motivated under section 6621(c)(3)(A)(v). Moreover, the term "tax motivated transaction" includes any section 6659(c) valuation overstatement. Sec. 6621(c)(3)(A)(i). In 1981, petitioners claimed a value for the recyclers in excess of 150 percent of the true value of the recyclers. Therefore, petitioners had a valuation overstatement as defined in section 6659(c). For section 6621(c) interest to apply, the underpayment of taxes must be "attributable to" a tax-motivated transaction. Where a valuation overstatement or other category of tax-motivated transaction is an integral part of or inseparable from the ground for disallowance of an item, section 6621(c) increased interest applies. See McCrary v. Commissioner, 92 T.C. at 859. We disallowed petitioners' claimed deductions and credits with *211 respect to DL and Associates and Clearwater because the transaction was found to lack economic substance and to be a sham. We found that the transaction lacked economic substance and was a sham largely because the recyclers were overvalued. Our finding of a valuation overstatement was an integral part of and inseparable from our finding that the transaction lacked economic substance and was a sham. Accordingly, respondent's determination as to the applicable interest rate for deficiencies attributable to tax-motivated transactions is sustained, and the increased rate of interest applies for the taxable year in issue. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the tax year at issue, unless otherwise stated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The notice of deficiency refers to sec. 6621(d). This section was redesignated as sec. 6621(c) by sec. 1511(c)(1)(A) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2744. For simplicity, we will refer to this section as sec. 6621(c)↩.
3. The parties did not stipulate certain facts concerning the Provizers, facts regarding the expert opinions, and other matters that we consider of minimal significance. Although the parties did not stipulate our findings regarding the expert opinions, they stipulated our ultimate finding of fact concerning the fair market value of the recyclers during 1981.↩