ALLAN J. AND DONNA L. PEARLMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pearlman v. Commissioner
Docket No. 27246-86
United States Tax Court
T.C. Memo 1995-182; 1995 Tax Ct. Memo LEXIS 176; 69 T.C.M. (CCH) 2460; April 18, 1995, Filed *176 Decision will be entered for respondent. For petitioners: Lois C. Blaesing and Chauncey W. Tuttle, Jr.
For respondent: Mary P. Hamilton, Paul Colleran, and William T. Hayes. DAWSON, WOLFE
DAWSON; WOLFE
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Norman H. Wolfe pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE WOLFE, Special Trial Judge: This case is part of the Plastics Recycling group of cases. For a detailed discussion of the transactions involved in the Plastics Recycling cases, see Provizer v. Commissioner, T.C. Memo. 1992-177, affd. without published opinion *177 996 F.2d 1216 (6th Cir. 1993). The facts of this case are substantially identical to those of the Provizer case. Like Harold Provizer, one of the taxpayers in the Provizer case, Allan J. Pearlman made a payment of $ 8,333 at the end of 1981 for a 16.66-percent interest in the DL and Associates general partnership. Pursuant to petitioners' request at trial, this Court took judicial notice of our opinion in the Provizer case. Respondent determined a deficiency in petitioners' joint 1981 Federal income tax in the amount of $ 17,827 and additions to tax for that year in the amount of $ 4,317 under section 6659 for valuation overstatement, in the amount of $ 891 under section 6653(a)(1) for negligence, and under section 6653(a)(2) in an amount equal to 50 percent of the interest due on the underpayment attributable to negligence. Respondent also determined that interest on deficiencies accruing after December 31, 1984, would be calculated at 120 percent of the statutory rate under section 6621(c). [2]
*178 The issues for decision are: (1) Whether expert reports and testimony offered by respondent are admissible into evidence; (2) whether petitioners are entitled to claimed deductions and tax credits with respect to petitioner Allan J. Pearlman's investment in DL and Associates; (3) whether petitioners are liable for additions to tax for negligence or intentional disregard of rules or regulations under section 6653(a)(1) and (2); (4) whether petitioners are liable for the addition to tax under section 6659 for an underpayment of tax attributable to valuation overstatement; and (5) whether petitioners are liable for increased interest under section 6621(c). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated by this reference. Petitioners resided in Huntington Woods, Michigan, when their petition was filed. During 1981, Allan J. Pearlman (petitioner) was corporate secretary and a partial owner of Canton China and Equipment Company (Canton China) and also was employed in a sales capacity for that company. Petitioner and his brother, Sheldon Pearlman, each own 23 percent of the stock of Canton China, *179 and his father, Meyer Pearlman, owns the remaining 54 percent of the stock. Petitioner has been employed by Canton China since 1964. During 1981, the gross revenues of Canton China were approximately $ 5 million. In 1981, petitioner Donna L. Pearlman was a teacher. Petitioners' gross income for 1981 from wages, interest, tax refunds, and miscellaneous sources was in excess of $ 93,000 and, consequently, in the absence of significant deductions or credits, they were subject to payment of Federal income taxes in substantial amounts. Petitioner is a partner in DL and Associates, which is a limited partner in the Clearwater limited partnership. DL and Associates is the same tier partnership that we considered in Provizer v. Commissioner, supra. The underlying deficiency in this case resulted from respondent's disallowance of claimed losses and tax credits that were passed through both Clearwater and DL and Associates to petitioner. Petitioners have stipulated to substantially the same facts concerning the underlying transactions as we found in Provizer v. Commissioner, supra.[3] Those facts may be summarized *180 as follows. In 1981, Packaging Industries, Inc. (PI), manufactured and sold six Sentinel expanded polyethylene (EPE) recyclers to ECI Corp. for $ 5,886,000 ($ 981,000 each). ECI Corp., in turn, resold the recyclers to F & G Corp. for $ 6,976,000 ($ 1,162,666 each). F & G Corp. then leased the recyclers to Clearwater which licensed the recyclers to FMEC Corp., which sublicensed them back to PI. All of the monthly payments required among the entities in the above transactions offset each other. These transactions were done simultaneously. We refer to these transactions collectively as the Clearwater transaction. The fair market value of a Sentinel EPE recycler in 1981 was not in excess of $ 50,000. *181 PI allegedly sublicensed the recyclers to entities that would use them to recycle plastic scrap. The sublicense agreements provided that the end-users would transfer to PI 100 percent of the recycled scrap in exchange for a payment from FMEC Corp. based on the quality and amount of recycled scrap. In 1981, petitioner acquired a 16.66-percent partnership interest in DL and Associates in exchange for his investment of $ 8,333. DL and Associates owned a 6.188-percent limited partnership interest in Clearwater. As a result of the pass through from Clearwater, petitioners deducted on their 1981 tax return an operating loss in the amount of $ 6,668 and claimed an investment tax credit in the amount of $ 7,195 and a business energy credit in the amount of $ 7,195 for the recyclers. Respondent disallowed petitioners' claimed deductions and credits related to DL and Associates and Clearwater for taxable year 1981. In 1981, petitioner learned of DL and Associates and the Clearwater transaction from David Lichtenstein (Lichtenstein). During 1981, Lichtenstein was a very close personal friend of petitioner. In addition, Lichtenstein was petitioner's personal attorney and also had represented *182 Canton China. Lichtenstein organized DL and Associates for the purpose of enabling a group of friends and associates to acquire an interest in recyclers through Clearwater. Lichtenstein was also a partner in DL and Associates. With respect to DL and Associates, Lichtenstein's duties were purely administrative. Petitioner graduated from high school in 1960 and attended Ferris State College and Michigan State University for 3 years but did not receive a degree. Petitioner Donna L. Pearlman was educated as a teacher. Petitioners do not have any formal training in investments. They do not have any education or work experience in plastics recycling or plastics materials. Petitioners did not independently investigate the Sentinel recyclers. Petitioners did not see a Sentinel recycler or any other type of plastic recycler prior to participating in the recycling ventures. OPINION In Provizer v. Commissioner, T.C. Memo. 1992-177, a test case involving the DL and Associates partnership and the Clearwater transaction, this Court (1) found that each Sentinel EPE recycler had a fair market value not in excess of $ 50,000, (2) held that the Clearwater transaction *183 was a sham because it lacked economic substance and a business purpose, (3) upheld the section 6659 addition to tax for valuation overstatement since the underpayment of taxes was directly related to the overstatement of the value of the Sentinel EPE recyclers, and (4) held that losses and credits claimed with respect to Clearwater were attributable to tax-motivated transactions within the meaning of section 6621(c). In reaching the conclusion that the Clearwater transaction lacked economic substance and a business purpose, this Court relied heavily upon the overvaluation of the Sentinel EPE recyclers. Although petitioners have not agreed to be bound by the Provizer opinion, they have stipulated that petitioner's investment in the Sentinel EPE recyclers was similar, if not identical, to the investment described in Provizer v. Commissioner, supra, and, pursuant to their request, we have taken judicial notice of our opinion in the Provizer case. Petitioner held a partnership interest in DL and Associates, the same tier partnership in which Harold Provizer had an interest. In the present case, venue for appeal lies to the Court of Appeals *184 for the Sixth Circuit, the same Court of Appeals that affirmed Provizer v. Commissioner, supra.While petitioners were not parties to the litigation in the Provizer case and res judicata does not apply, the doctrine of stare decisis is applicable. See Simmons v. Union News Co., 341 F.2d 531, 533 (6th Cir. 1965). Under these circumstances, in the absence of any significant distinguishing facts, respondent must be sustained on the authority of Provizer v. Commissioner, supra.Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971). Issue 1: Admissibility of Expert Reports and Testimony
Before addressing the substantive issues in this case, we resolve an evidentiary issue. At trial, respondent offered into evidence the expert opinions and testimony of Steven Grossman (Grossman) and Richard Lindstrom (Lindstrom). Petitioners object to the admissibility of the testimony and reports. The expert reports and testimony of Grossman and Lindstrom are identical to the testimony and reports *185 in Eisenberg v. Commissioner, T.C. Memo. 1995-180, (April 1995). In addition, petitioners' arguments with respect to the admissibility of the expert testimony and reports are identical to the arguments made in the Eisenberg case. For a detailed discussion of the reports, see Eisenberg v. Commissioner, supra, and Provizer v. Commissioner, supra. For a detailed discussion of the testimony and petitioners' arguments concerning the admissibility of the testimony and reports, see the Eisenberg case. For reasons set forth in Eisenberg v. Commissioner, supra, we hold that the reports and testimony of Grossman and Lindstrom are relevant and admissible and that Grossman and Lindstrom are experts in the fields of plastics, engineering, and technical information. We do not, however, accept Grossman or Lindstrom as experts with respect to the ability of the average person, who has not had extensive education in science and engineering, to conduct technical research, and we have limited our consideration of their reports and testimony to the areas *186 of their expertise. We also hold that Grossman's report meets the requirements of Rule 143(f). Issue 2: Deductions and Tax Credits With Respect to DL and Associates
On their joint 1981 Federal income tax return, petitioners claimed the following with respect to petitioner's investment in DL and Associates: (1) Deductions in the amount of $ 6,668; (2) an investment tax credit in the amount of $ 7,195; and (3) a business energy credit in the amount of $ 7,195. Respondent disallowed these claimed deductions and tax credits. The underlying transaction in this case is substantially identical in all respects to the transaction in Provizer v. Commissioner, supra. The parties have stipulated the facts concerning the deficiency essentially as set forth in our Provizer opinion. Based on this record, we hold that the Clearwater transaction was a sham and lacked economic substance. In reaching this conclusion, we rely heavily upon the overvaluation of the Sentinel EPE recyclers. Accordingly, respondent is sustained on the issue with respect to the underlying deficiency. Moreover, we note that petitioners have stated their concession of this *187 issue on brief. The record plainly supports respondent's determination regardless of such concession. For a detailed discussion of the facts and the applicable law, see Provizer v. Commissioner, supra.
Issue 3: Sec. 6653(a) Negligence
Respondent determined that petitioners were liable for the additions to tax under section 6653(a). Petitioners have the burden of proving that respondent's determination of an addition to the tax is erroneous. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. In cases involving negligence, an additional amount is added to the tax under section 6653(a)(2); such amount is equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence. Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would employ under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). *188 The question is whether a particular taxpayer's actions in connection with the transactions were reasonable in light of his experience and the nature of the investment or business. See Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973). Petitioner contends that he was reasonable in claiming deductions and credits with respect to his investment in DL and Associates and attempts to distinguish the instant case from Provizer v. Commissioner, T.C. Memo. 1992-177, by alleging the following: (1) That claiming the deductions and credits with respect to DL and Associates was reasonable in light of the "oil crisis" in the United States in 1981; (2) that in claiming the deductions and credits, petitioner specifically relied upon Lichtenstein; and (3) that petitioner was a so-called unsophisticated investor. When petitioners claimed the disallowed deductions and tax credits, they had little, if any, knowledge of the plastics or recycling industries and no engineering or technical knowledge. Petitioner did not independently investigate the Sentinel EPE recyclers and knew nothing about their value. In fact, petitioner *189 testified that the value of the recyclers did not matter to him. Petitioner declined to study or even examine the Clearwater offering memorandum. At trial, petitioner could remember almost nothing about the Clearwater transaction except the tax benefits. He could not recall the activities or the type of business in which Clearwater purportedly engaged, the assets owned by Clearwater, or the way in which Clearwater was supposed to generate income. Petitioner testified that the projected tax benefits of Clearwater were an incentive to invest in DL and Associates and that, at the time he made the investment, he was aware that within the following months he would receive tax benefits in amounts totaling at least the amount of his investment. Despite the ratio of claimed tax benefits to petitioner's cash outlay, petitioner contends that he was reasonable in claiming the deductions and credits related to DL and Associates because of the "oil crisis" in the United States during 1981. Petitioner argues that the oil, or energy, crisis led him to believe that an investment in recycling had good economic potential. He testified that the DL and Associates investment "tied in very closely" *190 with the oil crisis. However, as respondent's expert Grossman noted in his written report: Less than 10% of crude oil is in fact converted into monomers that are subsequently utilized for making plastic materials. The cost of a final plastic product will depend to a large extent on the technology available to convert the monomer into plastic form as well as prices for competitive (alternative) materials. Studies have shown that a 300% increase in crude oil prices results in only a 30 to 40% increase in the cost of plastic products. [Footnote omitted.]
Petitioner testified that he had "no idea" of the type of business, generally, in which Clearwater purportedly engaged, and that he was unaware of how DL and Associates was supposed to generate income. Still, petitioner argues that because of the oil crisis in the United States, he intended to profit from the investment. We find petitioner's vague, general claims concerning the oil crisis to be without merit. Petitioners also argue, in general terms, that due to rising oil prices in 1981, the Federal Government offered incentives to conserve energy, including the business energy credit and therefore, they were reasonable *191 in claiming large credits and deductions with respect to DL and Associates. As applied to the facts of this case, the argument is unpersuasive. Certainly, the Government was not providing tax benefits for supposed investments that actually were shams and lacked economic substance. See Greene v. Commissioner, 88 T.C. 376 (1987). In the first year of the investment alone, petitioners claimed direct reductions in their Federal income tax, via the investment tax credit and the business energy credit, equal to 173 percent of their cash investment. Therefore, like the taxpayers in Provizer v. Commissioner, supra, "except for a few weeks at the beginning, petitioners never had any money in the deal." A reasonably prudent person would not conclude without substantial investigation that the Government was providing massive tax benefits to taxpayers who took no risk and made no investment of their own capital. A reasonably prudent person would have asked a qualified independent tax adviser if this windfall were not too good to be true. McCrary v. Commissioner, 92 T.C. 827, 850 (1989). In *192 fact, petitioner argues that he consulted a qualified adviser, Lichtenstein, and relied on him in claiming the disallowed losses and tax credits. Petitioner argues that his reliance on the advice of Lichtenstein insulates him from the negligence-related additions to tax. Under some circumstances a taxpayer may avoid liability for the additions to tax under section 6653(a)(1) and (2) if reasonable reliance on a competent professional adviser is shown. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Such circumstances are not present in this case. Moreover, reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered. Id. In order for reliance on professional advice to excuse a taxpayer from the negligence additions to tax, the reliance must be reasonable, in good faith, and based upon full disclosure. Id.; see Weis v. Commissioner, 94 T.C. 473, 487 (1990); Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), *193 affd. without published opinion 940 F.2d 1534 (9th Cir. 1991); Pritchett v. Commissioner, 63 T.C. 149, 174-175 (1974). We have rejected pleas of reliance when neither the taxpayer nor the advisers purportedly relied upon by the taxpayer knew anything about the nontax business aspects of the contemplated venture. Freytag v. Commissioner, supra; Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983); Steerman v. Commissioner, T.C. Memo. 1993-447. Lichtenstein did not possess any special qualifications or professional skills in the recycling or plastics industries, and he did not hire anyone with plastics or recycling expertise to evaluate the Clearwater transaction. In evaluating the transaction, Lichtenstein relied upon the offering materials, some discussion with an attorney from the law firm that provided the tax opinion letter incorporated in the Clearwater offering circular, and Gordon, and Gordon relied on the offering materials and on discussions with persons *194 involved in the transaction. Petitioner first became aware of the Clearwater investments through Lichtenstein. Lichtenstein is a close personal friend of petitioner. In addition, in 1981, Lichtenstein served as petitioner's attorney in both personal and business matters. Although Lichtenstein customarily charged petitioner for his services, he did not charge petitioner for any advice he rendered in connection with DL and Associates and Clearwater. Petitioner's testimony was general and vague, providing no details of his inquiries of Lichtenstein or the advice he received from him. Petitioner testified that, in addition to speaking with Lichtenstein about DL and Associates and Clearwater, he also spoke with other partners in DL and Associates and Fred Gordon. At trial, petitioner could not recall the details of any conversation involving Clearwater. He only recalled that Lichtenstein and Gary Eisenberg, a fellow member of Provizer, Eisenberg, Lichtenstein, and Pearlman, P.C., allegedly had advised him that Clearwater was a good investment. Petitioner testified that he relied almost entirely on Lichtenstein in making his investment in DL and Associates and in claiming the associated *195 tax deductions and credits. Lichtenstein, however, testified that each partner in DL and Associates acted for himself, that any questions about the investment were directed to Fred Gordon, and that Lichtenstein's only association with the partnership, outside of being an investor, was to organize the partnership strictly as a convenience to enable his friends and associates to invest in Clearwater. He explained: "I could not invest for them. They were not my partners. They were individually buying their interest." We do not think petitioner's purported reliance on Lichtenstein was reasonable under the circumstances here. Accordingly, we hold that petitioners are not entitled to relief from the negligence-related additions to tax under section 6653(a) because of their alleged reliance on professional advice. Petitioners' reliance on Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408, is misplaced. The facts in the Heasley case are distinctly different from the facts of this case. Unlike the taxpayers in the Heasley case, petitioners are not unsophisticated. Petitioner is a financially *196 successful, experienced businessman and petitioner Donna L. Pearlman is educated as a teacher. In the Heasley case, the taxpayers read portions of the prospectus, while in this case petitioner made no attempt to read any information concerning the Clearwater investment and was remarkably oblivious to the details, or even the general concept, of the underlying transaction. Finally, the taxpayers in the Heasley case actively monitored their investment and, as the Fifth Circuit stated, intended to profit from the investment. We cannot reach similar conclusions in the instant case. Although petitioner testified that he intended to profit from the investment in DL and Associates and Clearwater, he has failed to provide evidence of any effort to monitor his investment or reliable evidence of any profit objective independent of tax savings. We consider petitioners' arguments with respect to the Heasley case inapplicable. Petitioner entered into the DL and Associates investment without any knowledge or background with respect to plastics or recycling and without seeking the advice of anyone who had such knowledge. Petitioner did not examine any Sentinel EPE recyclers prior *197 to investing in DL and Associates, and he did not seek the advice of an independent third party concerning the machines' values. Petitioners have not persuaded us that their situation is any different from that of the taxpayers in Provizer v. Commissioner, T.C. Memo. 1992-177, where the negligence additions to tax were upheld. Petitioners paid $ 8,333 and claimed a tax deduction of $ 6,668 and tax credits in the amount of $ 14,390 for the first year of the investment alone. We conclude that they were negligent in doing so. We hold, upon consideration of the entire record, that petitioners are liable for the negligence-related additions to tax under the provisions of section 6653(a)(1) and (2). Respondent is sustained on this issue. Issue 4: Sec. 6659 Valuation Overstatement
Respondent determined that petitioners are liable for the addition to tax for valuation overstatement under section 6659 on the underpayment of their 1981 Federal income tax attributable to the investment tax credit and business energy credit claimed with respect to DL and Associates and Clearwater. The underlying facts of this case with respect to this issue are substantially *198 the same as those in Eisenberg v. Commissioner, T.C. Memo. 1995-180. In addition, petitioners arguments with respect to this issue are identical to the arguments made in the Eisenberg case. For reasons set forth in the Eisenberg opinion, we hold that petitioners are liable for the section 6659 addition to tax at the rate of 30 percent of the underpayment of tax attributable to the disallowed credits for 1981. Issue 5: Sec. 6621(c) Tax-Motivated Transactions
Respondent determined that interest on deficiencies accruing after December 31, 1984, would be calculated under section 6621(c). The annual rate of interest under section 6621(c) equals 120 percent of the interest payable under section 6601 with respect to any substantial underpayment attributable to tax-motivated transactions. An underpayment is substantial if it exceeds $ 1,000. Sec. 6621(c)(2). The underlying facts of this case with respect to this issue are substantially the same as those in Eisenberg v. Commissioner, supra. In addition, petitioners' arguments on brief with respect to this issue are verbatim copies of the arguments in the *199 taxpayers' briefs in the Eisenberg case. For reasons set forth in the Eisenberg opinion, we hold that respondent's determination as to the applicable interest rate for deficiencies attributable to tax-motivated transactions is sustained and the increased rate of interest applies for the taxable year in issue. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the tax year at issue, unless otherwise stated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The notice of deficiency refers to sec. 6621(d). This section was redesignated as sec. 6621(c) by sec. 1511(c)(1)(A) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2744. For simplicity, we shall refer to this section as sec. 6621(c)↩.
3. The parties did not stipulate to certain facts concerning the Provizers, facts regarding the expert opinions, and other matters that we consider of minimal significance. Although the parties did not stipulate to our findings regarding the expert opinions, they stipulated to our ultimate finding of fact concerning the fair market value of the recyclers during 1981.↩