DAVID A. AND CHARLENE P. KOTT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kott v. Commissioner
Docket No. 28032-86
United States Tax Court
T.C. Memo 1995-181; 1995 Tax Ct. Memo LEXIS 175; 69 T.C.M. (CCH) 2455; April 18, 1995, Filed *175 Decision will be entered for respondent. For petitioners: Lois C. Blaesing and Chauncey W. Tuttle, Jr.
For respondent: Mary P. Hamilton, Paul Colleran, and William T. Hayes. DAWSON, WOLFE
DAWSON; WOLFE
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Norman H. Wolfe pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE WOLFE, Special Trial Judge: This case is part of the Plastics Recycling group of cases. For a detailed discussion of the transactions involved in the Plastics Recycling cases, see , affd. without published opinion *176 . The facts of this case are substantially identical to those of the Provizer case. Like Harold Provizer, one of the taxpayers in the Provizer case, David A. Kott purchased an interest in the DL and Associates general partnership. Pursuant to petitioners' request at trial, this Court took judicial notice of our opinion in the Provizer case. Respondent determined a deficiency in petitioners' joint 1981 Federal income tax in the amount of $ 35,727 and additions to tax for that year in the amount of $ 8,633 under section 6659 for valuation overstatement, in the amount of $ 1,786 under section 6653(a)(1) for negligence, and under section 6653(a)(2) in an amount equal to 50 percent of the interest due on the underpayment attributable to negligence. Respondent also determined that interest on deficiencies accruing after December 31, 1984, would be calculated at 120 percent of the statutory rate under section 6621(c). [2]
*177 The issues for decision are: (1) Whether expert reports and testimony offered by respondent are admissible into evidence; (2) whether petitioners are entitled to claimed deductions and tax credits with respect to petitioner David A. Kott's investment in DL and Associates; (3) whether petitioners are liable for additions to tax for negligence or intentional disregard of rules or regulations under section 6653(a)(1) and (2); (4) whether petitioners are liable for the addition to tax under section 6659 for an underpayment of tax attributable to valuation overstatement; and (5) whether petitioners are liable for increased interest under section 6621(c). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated by this reference. Petitioners resided in Farmington Hills, Michigan, when their petition was filed. During 1981, David A. Kott (petitioner) was an orthodontist. His spouse, petitioner Charlene P. Kott, was not employed outside the home during 1981. Petitioners' gross income from wages, interest, dividends, and tax refunds was in excess of $ 157,000 and, consequently, in the absence of significant *178 deductions or credits, they were subject to payment of Federal income taxes in substantial amounts. Petitioner is a partner in DL and Associates, which is a limited partner in the Clearwater limited partnership. DL and Associates is the same tier partnership that we considered in The underlying deficiency in this case resulted from respondent's disallowance of claimed losses and tax credits that were passed through both Clearwater and DL and Associates to petitioner. Petitioners have stipulated substantially the same facts concerning the underlying transactions as we found in [3] Those facts may be summarized as follows. In 1981, Packaging Industries, Inc. (PI), manufactured and sold six Sentinel expanded polyethylene (EPE) recyclers to ECI Corp. for $ 5,886,000 ($ 981,000 each). ECI Corp., in turn, resold the recyclers to F & G Corp. for $ 6,976,000 ($ 1,162,666 each). F & G Corp. then leased the recyclers to Clearwater, which licensed the recyclers to FMEC Corp., which sublicensed them back to PI. All of the monthly payments required among *179 the entities in the above transactions offset each other. These transactions were done simultaneously. We refer to these transactions collectively as the Clearwater transaction. The fair market value of a Sentinel EPE recycler in 1981 was not in excess of $ 50,000. PI allegedly sublicensed the recyclers to entities that would use them to recycle plastic scrap. The sublicense agreements provided that the end-users would transfer to PI 100 percent of the recycled scrap in exchange for a payment from FMEC Corp. based on the quality and amount of recycled scrap. In 1981, petitioner acquired a 33.33-percent partnership interest in DL and Associates in exchange *180 for his investment of $ 16,667. DL and Associates owned a 6.188-percent limited partnership interest in Clearwater. As a result of the pass through from Clearwater, petitioners deducted on their 1981 tax return an operating loss in the amount of $ 13,336 and claimed an investment tax credit in the amount of $ 14,389 and a business energy credit in the amount of $ 14,389 for the recyclers. Respondent disallowed petitioners' claimed deductions and credits related to DL and Associates and Clearwater for taxable year 1981. In 1981, petitioner learned of DL and Associates and the Clearwater transaction from David Lichtenstein (Lichtenstein). Lichtenstein is petitioner's first cousin and was his college roommate. Lichtenstein has been petitioner's attorney since Lichtenstein graduated from law school in 1967. Lichtenstein organized DL and Associates for the purpose of enabling a group of friends and associates to acquire an interest in recyclers through Clearwater. With respect to DL and Associates, Lichtenstein's duties were purely administrative. Petitioner attended the University of Michigan, graduated from the University of Michigan Dental School, received a master of science *181 degree in orthodontics from the Rackham School of Graduate Studies, and has been a practicing orthodontist since 1969. Petitioner Charlene P. Kott received a bachelor of science degree in dental hygiene from the University of Michigan. Petitioners do not have any formal training in investments, but they have purchased a variety of investments with successful results. They do not have any education or work experience in plastics recycling or plastics materials. Petitioners did not independently investigate the Sentinel recyclers. Petitioners did not see a Sentinel recycler or any other type of plastic recycler prior to participating in the recycling ventures. OPINION In , a test case involving the DL and Associates partnership and the Clearwater transaction, this Court (1) found that each Sentinel EPE recycler had a fair market value not in excess of $ 50,000, (2) held that the Clearwater transaction was a sham because it lacked economic substance and a business purpose, (3) upheld the section 6659 addition to tax for valuation overstatement since the underpayment of taxes was directly related to the *182 overstatement of the value of the Sentinel EPE recyclers, and (4) held that losses and credits claimed with respect to Clearwater were attributable to tax-motivated transactions within the meaning of section 6621(c). In reaching the conclusion that the Clearwater transaction lacked economic substance and a business purpose, this Court relied heavily upon the overvaluation of the Sentinel EPE recyclers. Although petitioners have not agreed to be bound by the Provizer opinion, they have stipulated that petitioner's investment in the Sentinel EPE recyclers was similar to the investment described in , and, pursuant to their request, we have taken judicial notice of our opinion in the Provizer case. Petitioner held a partnership interest in DL and Associates, the same tier partnership in which Harold Provizer had an interest. In the present case, venue for appeal lies to the Court of Appeals for the Sixth Circuit, the same Court of Appeals that affirmed While petitioners were not parties to the litigation in the Provizer case and res judicata *183 does not apply, the doctrine of stare decisis is applicable. See . Under these circumstances, in the absence of any significant distinguishing facts, respondent must be sustained on the authority of , affd. . Issue 1: Admissibility of Expert Reports and Testimony
Before addressing the substantive issues in this case, we resolve an evidentiary issue. At trial, respondent offered into evidence the expert opinions and testimony of Steven Grossman (Grossman) and Richard Lindstrom (Lindstrom). Petitioners object to the admissibility of the testimony and reports. The expert reports and testimony of Grossman and Lindstrom are identical to the testimony and reports in , (April, 1995). In addition, petitioners' arguments with respect to the admissibility of the expert testimony and reports are identical to the arguments *184 made in the Eisenberg case. For a detailed discussion of the reports see , and For a detailed discussion of the testimony and petitioners' arguments concerning the admissibility of the testimony and reports see the Eisenberg case. For reasons set forth in , we hold that the reports and testimony of Grossman and Lindstrom are relevant and admissible and that Grossman and Lindstrom are experts in the fields of plastics, engineering, and technical information. We do not, however, accept Grossman or Lindstrom as experts with respect to the ability of the average person, who has not had extensive education in science and engineering, to conduct technical research, and we have limited our consideration of their reports and testimony to the areas of their expertise. We also hold that Grossman's report meets the requirements of Rule 143(f). Issue 2: Deductions and Tax Credits With Respect to DL and Associates
On their joint 1981 Federal income tax return, petitioners claimed *185 the following with respect to petitioner's investment in DL and Associates: (1) Deductions in the amount of $ 13,336; (2) an investment tax credit in the amount of $ 14,389; and (3) a business energy credit in the amount of $ 14,389. Respondent disallowed these claimed deductions and tax credits. The underlying transaction in this case is substantially identical in all respects to the transaction in The parties have stipulated to the facts concerning the deficiency essentially as set forth in our Provizer opinion. Based on this record, we hold that the Clearwater transaction was a sham and lacked economic substance. In reaching this conclusion, we rely heavily upon the overvaluation of the Sentinel EPE recyclers. Accordingly, respondent is sustained on the issue with respect to the underlying deficiency. Moreover, we note that petitioners have stated their concession of this issue on brief. The record plainly supports respondent's determination regardless of such concession. For a detailed discussion of the facts and the applicable law, see *186 Issue 3: Sec. 6653(a) Negligence
Respondent determined that petitioners were liable for the additions to tax under section 6653(a). Petitioners have the burden of proving that respondent's determination of an addition to tax is erroneous. Rule 142(a); . Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. In cases involving negligence, an additional amount is added to the tax under section 6653(a)(2); such amount is equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence. Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would employ under the circumstances. . The question is whether a particular taxpayer's actions in connection with the transactions were reasonable in light of his experience and the nature of the investment or business. See . *187 Petitioner contends that he was reasonable in claiming deductions and credits with respect to his investment in DL and Associates and attempts to distinguish the instant case from , by alleging the following: (1) That claiming the deductions and credits with respect to DL and Associates was reasonable in light of the "oil crisis" in the United States in 1981; (2) that in claiming the deductions and credits, petitioner specifically relied on his accountant, Ronald Kief and on Lichtenstein; and (3) that petitioner was a so-called unsophisticated investor. When petitioners claimed the disallowed deductions and tax credits, they had little, if any, knowledge of the plastics or recycling industries and little engineering or technical background. Petitioner did not independently investigate the Sentinel EPE recyclers, and he knew nothing about their value. Instead, he assumed that the purported values of the Sentinel EPE recyclers set out in the offering memorandum were accurate, and he purportedly relied upon Lichtenstein to verify those values. Although petitioner looked at the offering memorandum for Clearwater *188 before he invested in DL and Associates, he claims that he did not fully understand the transactions involved. He testified that it was his understanding that DL and Associates purchased recyclers that were leased to end-users, that DL and Associates had an interest in the leases, and that DL and Associates would generate income from those leases. Based on the entire record, and especially on petitioner's testimony that he would not understand a recycling lease document if one were presented to him, we find that petitioner was unsure of precisely how DL and Associates was supposed to generate income from the leases. The Clearwater offering memorandum clearly stated that the Clearwater transaction involved significant tax risks and that in all likelihood the Internal Revenue Service would challenge the transaction. A careful consideration of the materials in the offering memorandum, especially the discussions in the prospectus of high writeoffs and risk of audit, would have alerted a prudent and reasonable investor to the questionable nature of the promised deductions and credits. See , *189 affg. sub nom. . Despite the warnings in the Clearwater offering memorandum, petitioner contends that he was reasonable in claiming the deductions and credits related to DL and Associates because of the "oil crisis" in the United States during 1981. Petitioner argues that because of the media coverage of the oil crisis, he believed that an investment in recycling had good economic potential. He testified that "because the price of oil was going up, the cost of any plastics would go up." However, as respondent's expert Grossman noted in his written report, "a 300% increase in crude oil prices results in only a 30 to 40% increase in the cost of plastic products." In addition, petitioner was unaware of precisely how DL and Associates was supposed to generate income. Petitioner's vague, general claims of reliance on the media coverage of the "oil crisis" do not support his contention that he intended to profit from his investment in DL and Associates. Petitioners also argue in general terms that due to rising oil prices in 1981, the Federal Government offered incentives to conserve energy, including the business *190 energy credit, and therefore they were reasonable in claiming large credits and deductions with respect to DL and Associates. As applied to the facts of this case, the argument is unpersuasive. Certainly, the Government was not providing tax benefits for supposed investments that actually were shams and lacked economic substance. See . In the first year of the investment, petitioners claimed direct reductions in their Federal income tax, via the investment tax credit and the business energy credit, equal to 173 percent of their cash investment. Therefore, like the taxpayers in , "except for a few weeks at the beginning, petitioners never had any money in the deal." A reasonably prudent person would not conclude without substantial investigation that the Government was providing massive tax benefits to taxpayers who took no risk and made no investment of their own capital. Moreover, during 1980 and 1981, in addition to the media coverage of the "oil crisis", there was "extensive continuing press coverage of questionable tax shelter *191 plans." , affg. . In light of the large tax benefits projected in the offering memorandum and petitioner's admitted observation of the media, we conclude that further investigation of the investment clearly was mandated. A reasonably prudent person would have asked a qualified independent tax adviser if this windfall were not too good to be true. . In fact, petitioner argues that he consulted qualified tax advisers and relied upon them in claiming the disallowed losses and tax credits. Petitioner argues that his reliance on the advice of Lichtenstein, his attorney, and Ronald Kief (Kief), his accountant, insulates him from the negligence-related additions to tax. Under some circumstances a taxpayer may avoid liability for the additions to tax under section 6653(a)(1) and (2) if reasonable reliance on a competent professional adviser is shown. , affd. , *192 affd. . Such circumstances are not present in this case. Moreover, reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered. Id. In order for reliance on professional advice to excuse a taxpayer from the negligence additions to tax, the reliance must be reasonable, in good faith, and based upon full disclosure. Id.; see ; , affd. without published opinion ; . We have rejected pleas of reliance when neither the taxpayer nor the advisers purportedly relied upon by the taxpayer knew anything about the nontax business aspects of the contemplated venture. ; ; . *193 The record does not show that either Lichtenstein or Kief possessed any special qualifications or professional skills in the recycling or plastics industries. In addition, neither Lichtenstein nor Kief hired anyone with plastics or recycling expertise to evaluate the Clearwater transaction. Petitioner first became aware of the Clearwater investments through Lichtenstein. Lichtenstein is petitioner's first cousin and a fellow investor in DL and Associates. He has been petitioner's attorney since 1967 and has represented petitioner in both personal and professional matters. Petitioner testified that he relied heavily on Lichtenstein in making his investment in DL and Associates and in claiming the associated tax deductions and credits. Petitioner testified that before he invested in DL and Associates and Clearwater, he and Lichtenstein discussed the facts of the Clearwater transaction, the profit potential of the transaction, the legality of the underlying transaction, and the potential tax benefits associated with the transaction. Petitioner, however, was still unsure of how the Clearwater transaction worked. He testified that Lichtenstein recommended that he invest in Clearwater *194 because Clearwater was an opportunity to earn income and reduce taxes. Petitioner contends that he should be relieved of the negligence-related additions to tax under section 6653(a) because he relied upon Lichtenstein. Lichtenstein, however, testified that each partner in DL and Associates acted for himself, that any questions about the investment were directed to Fred Gordon, and that Lichtenstein's only association with the partnership, outside of being an investor, was to organize the partnership strictly as a convenience to enable his friends and associates to invest in Clearwater. He explained: "I could not invest for them. They were not my partners. They were individually buying their interest." In evaluating the Clearwater transaction, Lichtenstein testified that he relied almost exclusively upon the offering materials, a call to an attorney at the New York law firm that prepared the opinion letter in the Clearwater offering circular, and especially Fred Gordon. Lichtenstein was aware that Gordon was being compensated in connection with the sale of interests in the Clearwater partnership. Petitioner was aware of the limited investigation that Lichtenstein made in evaluating *195 the Clearwater transaction and was satisfied. Petitioner's purported reliance on Lichtenstein was not reasonable. Petitioner contends that he also relied upon his accountant, Kief, in investing in DL and Associates and claiming the related deductions and tax credits. Petitioner's testimony was general and vague, providing no details of his inquiries of Kief or the advice he received from Kief. Petitioner testified that Kief helped him analyze "the basic concept" of the Clearwater investment and that Kief felt that the "concept" of the investment was worthwhile. Petitioner testified that Kief had investigated recycling investments, in general. However, the record in this case is unclear as to whether petitioner even provided Kief with a copy of the Clearwater offering memorandum. Petitioner does not seriously contend that Kief possessed any firsthand knowledge of the Clearwater transaction or the requisite expertise in recycling or the plastics industry to permit an evaluation of the merits of the Clearwater transaction. We do not think petitioner's purported reliance on Lichtenstein or Kief was reasonable, in good faith, and based on full disclosure. Accordingly, we hold *196 that petitioners are not entitled to relief from the negligence-related additions to tax under section 6653(a) because of their alleged reliance on professional advice. Petitioners' reliance on , revg. , is misplaced. The facts in the Heasley case are distinctly different from the facts of this case. In the Heasley case, the taxpayers were not educated beyond high school and had limited investment experience, while in the instant case petitioner was a financially successful, sophisticated, highly-educated, professional person with previous investment experience. Petitioner stated that prior to the Clearwater transaction, he had invested in stocks, bonds, commodities, mutual funds, and savings accounts and that, as to the results of these investments, "Almost all of them were excellent." The taxpayers in the Heasley case actively monitored their investment and, as the Fifth Circuit Court of Appeals stated, intended to profit from the investment. We cannot reach similar conclusions in the instant case. Although petitioner testified that *197 he monitored his investment in DL and Associates and intended to profit from the investment, he has failed to provide evidence of any serious efforts to monitor his investment or reliable evidence of any profit objective independent of tax savings. We consider petitioners' arguments with respect to the Heasley case inapplicable. Petitioner entered into the DL and Associates investment without any knowledge or background with respect to plastics or recycling and without seeking the advice of anyone who had such knowledge. Petitioner did not examine any Sentinel EPE recyclers prior to investing in DL and Associates, and he did not seek the advice of an independent third party concerning the machines' values. Petitioners have not persuaded us that their situation is any different from that of the taxpayers in , where the negligence additions to tax were upheld. Petitioners paid $ 16,667 and claimed a tax deduction of $ 13,336 and tax credits in the amount of $ 28,778 for the first year of the investment alone. We conclude that they were negligent in doing so. We hold, upon consideration of the entire *198 record, that petitioners are liable for the negligence-related additions to tax under the provisions of section 6653(a)(1) and (2). Respondent is sustained on this issue. Issue 4: Sec. 6659 Valuation Overstatement
Respondent determined that petitioners are liable for the addition to tax for valuation overstatement under section 6659 on the underpayment of their 1981 Federal income tax attributable to the investment tax credit and business energy credit claimed with respect to DL and Associates and Clearwater. The underlying facts of this case with respect to this issue are substantially the same as those in . In addition, petitioners' arguments with respect to this issue are identical to the arguments made in the Eisenberg case. For reasons set forth in the Eisenberg opinion, we hold that petitioners are liable for the section 6659 addition to tax at the rate of 30 percent of the underpayment of tax attributable to the disallowed credits for 1981. Issue 5: Sec. 6621(c) Tax-Motivated Transactions
Respondent determined that interest on deficiencies accruing after December 31, 1984, *199 would be calculated under section 6621(c). The annual rate of interest under section 6621(c) equals 120 percent of the interest payable under section 6601 with respect to any substantial underpayment attributable to tax-motivated transactions. An underpayment is substantial if it exceeds $ 1,000. Sec. 6621(c)(2). The underlying facts of this case with respect to this issue are substantially the same as those in In addition, petitioners' arguments on brief with respect to this issue are verbatim copies of the arguments in the taxpayers' briefs in the Eisenberg case. For reasons set forth in the Eisenberg opinion, we hold that respondent's determination as to the applicable interest rate for deficiencies attributable to tax-motivated transactions is sustained and the increased rate of interest applies for the taxable year in issue. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the tax year at issue, unless otherwise stated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The notice of deficiency refers to sec. 6621(d). This section was redesignated as sec. 6621(c) by sec. 1511(c)(1)(A) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2744. For simplicity, we will refer to this section as sec. 6621(c).↩
3. The parties did not stipulate certain facts concerning the Provizers, facts regarding the expert opinions, and other matters that we consider of minimal significance. Although the parties did not stipulate our findings regarding the expert opinions, they stipulated our ultimate finding of fact concerning the fair market value of the recyclers during 1981.↩