T.C. Memo. 1997-306


UNITED STATES TAX COURT


JOHN C. VANDERSCHRAAF AND CORNELIA VANDERSCHRAAF, ET AL.,[1] Petitioners <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 37087-86, 6079-88,      Filed July 2, 1997.
8910-88, 21729-88.


<u>Michael J. Christianson</u>, for petitioners.

<u>Elizabeth Girafalco Chirich</u> and <u>Susan K. Greene</u>, for respondent.

---

[1]     Cases of the following petitioners are consolidated herewith:  Estate of Donald R. Lawrenz, Sr., Deceased, Donald R. Lawrenz, Jr., Executor, and Ella A. Lawrenz, docket No. 6079-88; John C. Vanderschraaf and Cornelia Vanderschraaf, docket No. 8910-88; and Estate of Donald R. Lawrenz, Sr., Deceased, Donald R. Lawrenz, Jr., Executor, docket No. 21729-88.

Petitioner Donald R. Lawrenz, Sr., died on Sept. 7, 1996.

MEMORANDUM OPINION


SWIFT, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income taxes, additions to tax, and
increased interest, as follows:


<u>Docket Nos. 37087-86 and 8910-88</u>

John C. and Cornelia Vanderschraaf

| | | Increased Interest and Additions to Tax | | | | | |
|---|---|---|---|---|---|---|---|
| <u>Year</u> | <u>Deficiency</u> | Sec.<br><u>6621(c)</u> | Sec.<br><u>6653(a)</u> | Sec.<br><u>6653(a)(1)</u> | Sec.<br><u>6653(a)(2)</u> | Sec.<br><u>6659</u> | Sec.<br><u>6661</u> |
| 1980 | $ 23,084 | * | $1,154 | -- | -- | -- | -- |
| 1981 | 21,939 | * | -- | $1,097 | ** | $6,582 | -- |
| 1982 | 12,184 | * | -- | 609 | ** | 3,655 | *** |


<u>Docket No. 6079-88</u>

Estate of Donald R. Lawrenz, Sr., Deceased, and Ella A. Lawrenz

| | | Increased Interest and Additions to Tax | | | | |
|---|---|---|---|---|---|---|
| <u>Year</u> | <u>Deficiency</u> | Sec.<br><u>6621(c)</u> | Sec.<br><u>6653(a)</u> | Sec.<br><u>6653(a)(1)</u> | Sec.<br><u>6653(a)(2)</u> | Sec.<br><u>6659</u> |
| 1980 | $137,835 | * | $6,892 | -- | -- | -- |
| 1981 | 200,227 | * | -- | $10,011 | ** | $60,068 |


<u>Docket No. 21729-88</u>

Estate of Donald R. Lawrenz, Sr., Deceased

| | | Increased Interest and Addition to Tax | |
|---|---|---|---|
| <u>Year</u> | <u>Deficiency</u> | Sec.<br><u>6621(c)</u> | Sec.<br><u>6653(a)</u> |
| 1979 | $212,325 | * | $10,616 |


    *   120 percent of interest accruing after Dec. 31, 1984,
on portion of the underpayment attributable to a tax-
motivated transaction.

   **   50 percent of interest due on portion of underpayment
attributable to negligence.

 ***   25 percent of underpayment due on portion attributable
to substantial understatement of tax.

Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After settlement of some issues, the primary issue for decision is whether the profit objective of certain partnership investments should be measured at the partnership level or at the individual partner level.

## Background

Many of the facts have been stipulated and are so found. The entire trial record and the testimony and exhibits admitted into evidence in our test case opinion in Krause v. Commissioner, 99 T.C. 132, 133-167 (1992), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994), have been stipulated as part of the trial record herein. Krause involved limited partnership investments that are closely related to the limited partnership investments at issue herein.

Background and other general facts as they were found in Krause that relate directly and indirectly to the partnership investments involved herein we, by this reference, incorporate as findings of fact in the instant cases.

Petitioners, John C. and Cornelia Vanderschraaf, resided in Fountain Valley, California, at the time they filed their petitions.

Petitioners, Donald R. and Ella A. Lawrenz, resided in Corona Del Mar, California, at the time they filed their petitions.

On their respective Federal income tax returns for the years in issue, petitioners claimed large losses and interest deductions relating to investments as limited partners in Boulder Oil and Gas Associates (Boulder), Technology Oil and Gas Associates 1979 (Tech-1979), and Winfield Oil and Gas Associates (Winfield).  Respondent disallowed these claimed losses and interest deductions, and petitioners filed the instant cases contesting respondent's adjustments.

After a lengthy trial in the Krause test cases, we analyzed, primarily at the partnership level, the objective of the particular partnerships involved in Krause.  We concluded that the partnerships did not have the requisite profit objective to support the losses claimed, and we sustained respondent's disallowance of the claimed losses relating to the taxpayers' investments in the partnerships.  Also, on the ground that the underlying debt obligations did not constitute genuine debt, we sustained respondent's disallowance of the claimed interest deductions relating thereto, and we imposed an increased interest rate under section 6621(c).

We did not, however, in the Krause test case opinion sustain respondent's determinations under sections 6653(a)(1) and (2),

- 5 -

6659, and 6661 of additions to tax for negligence, for valuation overstatements, and for substantial understatements of tax.

As indicated, our findings and holdings in Krause v. Commissioner, supra, were affirmed by the U.S. Court of Appeals for the Tenth Circuit.

The license agreements entered into by Boulder, Tech-1979, and Winfield with Elektra are not materially different from the license agreements entered into by the partnerships involved in the Krause test cases.

Facts found and conclusions reached in Krause with regard specifically to lack of profit objective of the partnerships involved in Krause are incorporated herein by reference and apply to Boulder, Tech-1979, and Winfield.

Similar to our findings in Krause v. Commissioner, supra at 169, with regard to the partnerships involved therein, the stated consideration agreed to by Boulder, Tech-1979, and Winfield for the license of enhanced oil recovery (EOR) technology and for the lease of tar sands properties was excessive, bore no relation to the value of that which was acquired, did not conform to industry norms, and precluded any realistic opportunity for profit.

In the oil and gas industry, a portfolio of technology is not ordinarily licensed when it is not known whether the technology will even work on the property on which the technology is to be implemented.  EOR technology is known to be site specific.  For this reason, the acquisition of a portfolio of EOR

technology for use on particular properties typically does not occur in the oil industry.

In the late 1970's and early 1980's, when the license agreements involved in these cases were entered into, the established license fee in the oil industry for the right to use EOR technology was a 2-3 percent running royalty based on incremental increased oil production, or on the income actually realized therefrom, that was attributable to the particular EOR technology being licensed. The fixed fees to be paid by Boulder, Tech-1979, and Winfield for the EOR technology licenses were not competitive in the oil industry and were contrary to industry norms.

It was not necessary for Boulder, Tech-1979, and Winfield to license these technologies. Of the technologies licensed -- Carmel VaporTherm (Carmel), TEC, ElektraFlo, and SME Oil Drive -- only the TEC and Carmel processes were developed to any significant extent, and the TEC and Carmel processes could have been licensed by the partnerships directly from the inventors thereof for running royalties based solely on income realized therefrom. Thus, it was not necessary for Boulder, Tech-1979, and Winfield to license the Carmel and TEC processes from Elektra and pay up-front fees for them.

In the oil exploration and production industry, it is ordinary to lease tar sands properties based on projections of reserves, not oil in place.

The multimillion dollar license fees and lease royalties that Boulder, Tech-1979, and Winfield agreed to pay were excessive, did not reflect arm's-length debt obligations, and are not to be recognized as legitimate obligations of the partnerships. The license fees and lease royalties to which Boulder, Tech-1979, and Winfield agreed, and the related debt obligations, do not constitute legitimate, genuine debt obligations and are to be disregarded.

On partnership information returns of Boulder, Tech-1979, and Winfield, petitioners were identified as partners, and on petitioners' respective individual Federal income tax returns for the years in issue, they reported their distributive share of the substantial claimed losses and credits relating to Boulder, Tech-1979, and Winfield. By claiming these flowthrough partnership losses, petitioners repeatedly represented to respondent the existence of these partnerships and petitioners' status as partners of the partnerships.

It was the general partners and the promoters of Boulder, Tech-1979, and Winfield, not the limited partners, who controlled the transactions and activities of the partnerships. Actions and intent of the general partners with regard to Boulder, Tech-1979, and Winfield, including the profit objective of the partnerships or lack thereof, are attributable to petitioners. See Utah Code Ann. secs. 48-1-9, -11 to -15, -17, -18; 48-2a-403 (1994).

Discussion

It is well established that the issue under section 183 as to whether partnerships are engaged in activity with a profit objective is determined at the partnership level. Pasternak v. Commissioner, 990 F.2d 893, 900 (6th Cir. 1993), affg. Donahue v. Commissioner, T.C. Memo. 1991-181; Simon v. Commissioner, 830 F.2d 499, 507 (3d Cir. 1987), affg. T.C. Memo. 1986-156; Krause v. Commissioner, 99 T.C. 132 (1992) (and cases cited therein); Drobny v. Commissioner, 86 T.C. 1326, 1341 (1986) (motion to vacate denied at T.C. Memo. 1995-209, affd. 113 F.3d 670 (7th Cir. 1997)); Brannen v. Commissioner, 78 T.C. 471, 505 (1982), affd. 722 F.2d 695 (11th Cir. 1984); Hager v. Commissioner, 76 T.C. 759, 782 n.11 (1981).

In resolving this issue, courts focus on actions of the partners who manage affairs of the partnerships and upon whom other partners rely to make partnership decisions. Drobny v. Commissioner, 86 T.C. at 1341 (citing Brannen v. Commissioner, 78 T.C. at 504-505); Fox v. Commissioner, 80 T.C. 972, 1007-1008 (1983), affd. without published opinion 742 F.2d 1441 (2d Cir. 1984), affd. sub nom. Barnard v. Commissioner, 731 F.2d 230 (4th Cir. 1984), affd. without published opinions sub nom. Hook v. Commissioner, Kratsa v. Commissioner, Leffel v. Commissioner, Rosenblatt v. Commissioner, Zemel v. Commissioner, 734 F.2d 5, 6-7, 9 (3d Cir. 1984). Under any other approach, different results would accrue to partners in the same partnerships even though the

partners themselves may have had no control over activity of the partnerships. See Independent Elec. Supply, Inc. v. Commissioner, 781 F.2d 724, 729 (9th Cir. 1986), affg. Lahr v. Commissioner, T.C. Memo. 1984-472; Resnik v. Commissioner, 66 T.C. 74, 81 (1976), affd. per curiam 555 F.2d 634 (7th Cir. 1977). For these reasons, in analyzing the profit objective of, in particular, limited partnerships, individual actions of limited partners are not the focus of the analysis.

The U.S. Court of Appeals for the Ninth Circuit has repeatedly accepted the proposition that a partnership level determination of profit objective is proper. See, e.g., Balboa Energy Fund 1981 v. Commissioner, 85 F.3d 634 (9th Cir. 1996), affg. in part and revg. in part without published opinion Osterhout v. Commissioner, T.C. Memo. 1993-251; Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), affg. T.C. Memo. 1991-212; Vorsheck v. Commissioner, 933 F.2d 757, 758 (9th Cir. 1991); Polakof v. Commissioner, 820 F.2d 321, 323 (9th Cir. 1987), affg. T.C. Memo. 1985-197; Independent Elec. Supply, Inc. v. Commissioner, supra at 729.

Analyzing under section 183 the profit objective element at the partnership level is consistent with and follows the general rule of Federal partnership taxation that the treatment of partnership income, loss, deduction, or credit be determined at the partnership level. Sec. 702(b); Podell v. Commissioner, 55 T.C. 429, 433 (1970) (citing Estate of Freeland v. Commissioner,

393 F.2d 573 (9th Cir. 1968), affg. T.C. Memo. 1966-283); sec. 1.702-1(b), Income Tax Regs.

Section 761(a) defines a partnership for Federal income tax purposes essentially as a group, joint venture, or other unincorporated organization through which any business, financial operation, or venture is carried on. See also sec. 7701(a)(2) and sec. 1.761-1(a), Income Tax Regs., under which the term "partnership" is defined more broadly than the common law meaning of partnership.

Petitioners argue that our holding in Krause v. Commissioner, supra, disallowing under section 183 claimed partnership losses for lack of profit objective (and any holding herein to the same effect with regard to Boulder, Tech-1979, and Winfield) effectively constitutes a holding that the purported partnerships did not constitute legal partnerships. Petitioners argue therefrom that in the instant cases Boulder, Tech-1979, and Winfield must be regarded by the Court as something other than legal partnership entities and that a partnership entity level analysis of profit objective should not be applied. Petitioners argue further that the Court has no option in these cases but to apply section 183 at the individual partner level with regard to each and every partner in Boulder, Tech-1979, and Winfield.

Citing section 761(a) and section 301.7701-3(a), Proced. & Admin. Regs., petitioners argue further that partnerships lacking in profit objective are to be regarded as not engaged in any

trade or business and that in such situations the partners' investments should be regarded as the mere coownership of property.  We disagree.

Petitioners' specific arguments herein were rejected in Madison Gas & Elec. Co. v. Commissioner, 72 T.C. 521, 561-563 (1979), affd. 633 F.2d 512 (7th Cir. 1980).  In Madison Gas & Elec. Co., it was concluded that under section 761(a) a partnership may exist even without a profit objective.  Section 761(a) merely requires an "unincorporated organization, through or by means of which any business, financial operation, or venture is carried on."  Madison Gas & Elec. Co. v. Commissioner, 633 F.2d at 514; see also Pasternak v. Commissioner, 990 F.2d at 900 (tax shelter cotenancies treated as partnerships under sections 761(a) and 7701(a)(2)); Brannen v. Commissioner, supra at 512 n.16 (tax shelter partnership not engaged in business for profit under section 183 treated as partnership under section 761(a)).

In National Commodity & Barter Association v. United States, 843 F. Supp. 655, 659, 661 (D. Colo. 1993), affd. without published opinion 42 F.3d 1406 (10th Cir. 1994), an entity that was organized largely to resist taxes was treated as a partnership under section 761.

Petitioners cite certain court opinions out of context.  In Commissioner v. Culbertson, 337 U.S. 733, 740 (1949), the Supreme Court stated that a partnership constitutes an organization for

production of income to which each partner contributes one or both of the ingredients of income, which are capital or service.

References to partnership income in Commissioner v. Culbertson, supra, as well as in Commissioner v. Tower, 327 U.S. 280 (1946), and Form Builders, Inc. v. Commissioner, T.C. Memo. 1990-75, involve the issue of whether a taxpayer is to be treated as having invested in a partnership, as distinguished from an investment in some other type of taxable entity, an issue different from the issue of whether the underlying activity of the partnership was entered into for profit.

In cases such as Krause v. Commissioner, 99 T.C. 132 (1992), and the instant cases, the focus of the analysis is on whether the underlying activity entered into by the partnerships was supported by economic substance and profit objective. See, e.g., Independent Elec. Supply, Inc. v. Commissioner, 781 F.2d 724, 726 (9th Cir. 1986), affg. Lahr v. Commissioner, T.C. Memo. 1984-472 (citing Hirsch v. Commissioner, 315 F.2d 731, 736 (9th Cir. 1963), affg. T.C. Memo. 1961-256); Krause v. Commissioner, supra at 168 (citing Nickeson v. Commissioner, 962 F.2d 973 (10th Cir. 1992), affg. Brock v. Commissioner, T.C. Memo. 1989-641). In that context and in regard to that particular issue, a court decision that a partnership activity does not constitute a trade or business, has no economic substance, or lacks a profit objective, does not constitute, and is not equivalent to, a

holding that the investors intended to create an entity other than a partnership.

For example, our focus in <u>Krause</u> was not on whether the parties intended to form partnerships. Our focus was on the underlying <u>activity</u> <u>and</u> <u>transactions</u> entered into by the partnerships after the investors entered into and invested in the partnerships.

As previously noted, finding that the underlying transactions entered into by the partnerships did not constitute arm's-length transactions, that the license fees agreed to were not negotiated at arm's length and were excessive, and that the assets acquired were overvalued, we held that the transactions entered into by the partnerships, upon which the losses in dispute were based, were not entered into with a profit objective, that the underlying transactions did not constitute legitimate for-profit business transactions, and that purported debt obligations associated therewith did not constitute genuine debt obligations and were to be disregarded.[2] <u>Krause v. Commissioner</u>, 99 T.C. at 140-141, 145, 171, 175-176.

The essence and focus of the inquiry as to whether an arrangement constitutes a partnership is whether the parties thereto intended to create a partnership. See, e.g.,

_____

[2]    It is noted that the Court made these findings in <u>Krause v. Commissioner</u>, 99 T.C. 132 (1992), affd. sub nom. <u>Hildebrand v. Commissioner</u>, 28 F.3d 1024 (10th Cir. 1994), with respect to a sister partnership, Technology-1980.

Commissioner v. Culbertson, 337 U.S. at 742; S & M Plumbing Co. v. Commissioner, 55 T.C. 702, 707 (1971).  Certain factors are indicative of such an intent.

In Allison v. Commissioner, T.C. Memo. 1976-248, we noted four basic attributes of a joint venture or partnership:  (1) A contract that a joint venture be formed; (2) the contribution of money, property, and/or services; (3) an agreement for joint proprietorship and control; and (4) an agreement to share profits.  Id.; see also S & M Plumbing Co. v. Commissioner, supra at 707.  Boulder, Tech-1979, and Winfield have all four of these attributes.

In Johnson v. United States, 632 F. Supp. 172, 174 (W.D. N.C. 1986), the following factors were particularly relevant to a conclusion that a partnership existed:  (1) Whether a partnership agreement existed; (2) whether the investors represented to others that they were partners; (3) whether the investors had a proprietary interest in partnership profits and losses; (4) whether the investors had a right to control partnership income and capital; and (5) whether the investors contributed capital and services.  See also United States v. Levasseur, 45 AFTR 2d 80-1507 at 1511, 80-1 USTC par. 9349 at 83,880 (D. Vt. 1980) (citing Estate of Kahn v. Commissioner, 499 F.2d 1186, 1189 (2d Cir. 1974), affg. Grober v. Commissioner, T.C. Memo. 1972-240).

Boulder, Tech-1979, and Winfield did not constitute mere passive coowners of property. The partnerships entered into transactions, formed joint ventures, operated gas wells, and engaged in various other activities. They carried on a financial operation or venture. They are to be treated as partnerships under section 761(a) even though underlying activity of the partnerships lacked a profit objective under section 183.

Boulder, Tech-1979, and Winfield each had the formal indicia of partnership status and conducted themselves generally as partnerships. They are to be treated as partnerships. The issue under section 183 as to the profit objective of the partnership activity is to be analyzed at the partnership level. Our conclusion in Krause v. Commissioner, supra, and herein that activity and transactions of the partnerships were not entered into with a profit objective does not affect the status of Boulder, Tech-1979, and Winfield as partnerships for Federal income tax purposes.

Our findings herein as to the lack of profit objective of the underlying activity of Boulder, Tech-1979, and Winfield are based in part on petitioners' failure to meet their burden of proof as to the existence of a profit objective with respect to the underlying activity of Boulder, Tech-1979, and Winfield, on the fact that the entire record and evidence of Krause was stipulated to as evidence in the instant cases, and on the doctrine of stare decisis.

Stare decisis may apply even though -- because the parties in

the present case are not the same parties as were involved in the prior case -- res judicata would not apply. Simmons v. Union News Co., 341 F.2d 531, 533 (6th Cir. 1965); Leishman v. Radio Condenser Co., 167 F.2d 890 (9th Cir. 1948).

We have applied stare decisis when faced with repetitive litigation involving the Federal income tax consequences of investments in related tax shelter partnerships. See Pearlman v. Commissioner, T.C. Memo. 1995-182; Kott v. Commissioner, T.C. Memo. 1995-181; Eisenberg v. Commissioner, T.C. Memo. 1995-180; Decker v. Commissioner, T.C. Memo. 1995-38; Brown v. Commissioner, T.C. Memo. 1994-43; Kozlowski v. Commissioner, T.C. Memo. 1993-430, affd. without published opinion 70 F.3d 1279 (9th Cir. 1995); Walsh v. Commissioner, T.C. Memo. 1993-421, revd. in part on another issue without published opinion 72 F.3d 136 (9th Cir. 1995).

With regard to Tech-1979 and Winfield, on the one hand, and Technology-1980 (one of the partnerships involved in Krause v. Commissioner, supra), on the other, petitioners allege that a material difference exists based on a variation between the license agreements of Tech-1979 and Winfield and the license agreements of Technology-1980. Petitioners did not present any credible evidence to establish how the alleged difference is material.

Respondent's expert witness testified that although Tech-1979's and Winfield's license agreements had a somewhat different structure from Technology-1980's, they were not materially

different.  Petitioners have not alleged any differences between
the license agreements of Boulder and Technology-1980.

We agree with respondent's expert that there were no material
differences between the various license agreements of Boulder,
Tech-1979, and Winfield and the license agreements of Technology-
1980.

Petitioners have failed to show that the applicable findings
of fact made in Krause with regard to the lack of profit objective,
the license agreements, and the nongenuine nature of the purported
debt obligations should not be applied in these cases.  We conclude
that the activity and transactions of Boulder, Tech-1979, and
Winfield lacked profit objective, as did the transactions of
Technology-1980 and the other partnerships that were involved in
Krause.

In light of our resolution of the profit objective issue, it
is not necessary to address certain other substantive issues raised
by the parties.

Additions to Tax and Increased Interest

In our opinion in Krause v. Commissioner, 99 T.C. at 177-180,
we discussed at some length our reasons for not sustaining
respondent's determination of the same additions to tax that
respondent has determined with regard to petitioners herein.  We
believe that that discussion, as set forth in Krause and as

repeated below, is relevant to the additions to tax and increased interest at issue herein.

For the years before us, section 6653(a)(1) provides additions to tax equal to 5 percent of the underpayments if any part of the underpayments are due to negligence or intentional disregard of rules or regulations.  Section 6653(a)(2) provides an addition to tax of 50 percent of the interest on the portion of the underpayment attributable to negligence.  Negligence under section 6653(a)(1) and (2) constitutes the failure to exercise due care or the failure to do what a reasonable or ordinarily prudent person would do under the circumstances.  Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985).

With regard to our analysis of the additions to tax, it is important to note that one of respondent's own expert witnesses acknowledges that investors may have been significantly and reasonably influenced by the energy price hysteria that existed in the late 1970's and early 1980's to invest in EOR technology.  A number of industry and governmental reports and publications encouraged investors to invest in EOR technology.  Various governmental incentives, funding, and subsidies were directed at development of EOR technology.  In the early 1980's, a large amount of money was spent on the development of technology for the recovery of oil from shale and synthetic fuels in spite of the fact

that such technology was not technically viable at the time and that minimal oil was produced therefrom.

In evaluating the imposition of the additions to tax in the instant cases, and in light of the above facts (encouraging investments in and the development of tertiary oil recovery methods such as EOR technology), we are somewhat understanding of the individual investments that were made in the Boulder, Tech-1979, and Winfield partnerships. In the context of the hysteria relating to the energy crisis, the oil price increases of the late 1970's, the industry and governmental interest in EOR technology, the heavy and sophisticated promotion of these investments, and the evidence in these cases (and in spite of our findings and conclusions sustaining respondent's substantive tax adjustments), we conclude that petitioners are not liable for the additions to tax under section 6653(a)(1) and (2).

For 1981 and 1982, respondent in these cases, on brief, has conceded the section 6659 additions to tax.

For 1982, respondent asserts that petitioners, John and Cornelia Vanderschraaf, are liable for an addition to tax for substantial understatement of tax under section 6661, equal to 25 percent of the respective underpayment of tax attributable to such understatement of tax. In order for an understatement of tax to be considered substantial, the amount of the understatement must exceed the greater of 10 percent of the tax required to be shown on the Federal income tax return or $5,000. Sec. 6661(b)(1)(A).

Respondent contends that the addition to tax under section 6661 should be imposed because there was no substantial authority supporting the claimed treatment of the disallowed items. Petitioners argue that they should be held not liable for the section 6661 addition to tax and that respondent should have waived the section 6661 addition to tax.

Respondent also argues that petitioners never formally requested respondent to waive the section 6661 addition to tax, and respondent argues that the Court therefore is without jurisdiction to review respondent's refusal to waive this addition to tax.

On the record in these cases, we conclude that the section 6661 addition to tax has always been before the Court and in dispute between the parties. Respondent has been aware for years of petitioners' request for an abatement thereof.

In the related test case of Krause v. Commissioner, 99 T.C. at 179 (on general grounds that are also applicable to petitioners herein), we expressly addressed and rejected respondent's imposition of the section 6661 addition to tax. Based on the record in these cases, we conclude that respondent's refusal to waive the section 6661 addition to tax constitutes an abuse of discretion. Mailman v. Commissioner, 91 T.C. 1079 (1988); see also Vorsheck v. Commissioner, 933 F.2d 757 (9th Cir. 1991).

As we explained in Krause v. Commissioner, 99 T.C. at 180, imposition of increased interest under section 6621(c), and its predecessor section 6621(d), is more automatic. Section 6621(c)

provided an increased rate of interest for substantial underpayments attributable to tax-motivated transactions. Substantial underpayments are defined as underpayments in excess of $1,000. By regulation, among the types of transactions that are considered to be tax-motivated transactions within the meaning of section 6621(c) are those with respect to which the related tax deductions are disallowed under section 183 for lack of profit objective. Rybak v. Commissioner, 91 T.C. 524, 568 (1988); sec. 301.6621-2T, A-4(1), Temporary Proced. & Admin. Regs., 49 Fed. Reg. 50392 (Dec. 28, 1984). In light of our findings as to the lack of profit objective, petitioners are liable for increased interest under section 6621(c).

For the reasons stated, respondent's imposition of the additions to tax is not sustained in these cases, but respondent's imposition of increased interest under section 6621(c) is sustained.

Decisions will be entered
under Rule 155.